**KOCH REFINING COMPANY, a Delaware corporation, Plaintiff,**

**and**

**Ashland Oil, Inc., a Kentucky corporation, Plaintiff-Intervenor,**

v.

**UNITED STATES DEPARTMENT OF ENERGY, Charles W. Duncan, Jr., Secretary, United States Department of Energy, Robert G. Bidwell, Jr., Chief of Crude Oil Allocations, Economic Regulatory Administration, United States Department of Energy, and Melvin Goldstein, Esq., Director, United States Department of Energy Office of Hearings and Appeals, Defendants,**

**and**

**Mobil Oil Corporation, Defendant-Intervenor.**

**STATE OF MINNESOTA, by its Attorney General Warren Spannaus and its Energy Agency, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF ENERGY, Charles W. Duncan, Jr., Secretary, United States Department of Energy, Robert G. Bidwell, Jr., Chief of Crude Oil Allocations, Economic Regulatory Administration, United States Department of Energy, and Melvin Goldstein, Esq., Director, United States Department of Energy Office of Hearings and Appeals, Defendants,**

**and**

**Mobil Oil Corporation, Defendant-Intervenor.**

**Civ. Nos. 4–80–292, 4–80–315.**

United States District Court, D. Minnesota, Fourth Division.

Dec. 29, 1980.

Joe A. Walters, William E. Flynn, and Douglas J. Franzen, O'Connor & Hannan, Minneapolis, Minn., for plaintiff Koch Refining Co.

Gordon G. Busdicker, James B. Loken, and John F. Beukema, Faegre & Benson, Minneapolis, Minn., for plaintiff-intervenor Ashland Oil, Inc.

James Hamilton, Ginsburg, Feldman, Weil & Bress, Washington, D. C., for plaintiff Koch Refining Co. and plaintiff-intervenor Ashland Oil, Inc.

Warren R. Spannaus, Atty. Gen., State of Minnesota, and Dwight S. Wagenius and William P. Donohue, James E. Lackner, Sp. Asst. Attys. Gen., St. Paul, Minn., for plaintiff State of Minnesota.

Thomas K. Berg, U. S. Atty., and Stephen G. Palmer, Asst. U. S. Atty., Minneapolis, Minn., and Paul G. Wallach and Thomas A. Schweitzer, Regulatory Litigation Div., U. S. Dept. of Energy, Washington, D. C., for defendants U. S. Dept. of Energy, Charles W. Duncan, Jr., Robert G. Bidwell, Jr., and Melvin Goldstein.

Thomas C. Kayser and Gary J. Haugen, Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., Michael J. Madigan, Edward L. Rubinoff, and David A. Holzworth, Akin, Gump, Hauer & Feld, Washington, D. C., and William C. Streets, Mobil Oil Corporation, New York City, of counsel, for defendant-intervenor Mobil Oil Corp.

## MEMORANDUM INCORPORATING FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR JUDGMENT

MacLAUGHLIN, District Judge.

This matter is before the Court on the motions of defendant-intervenor Mobil Oil

Corporation (hereinafter "Mobil") for the entry of judgment on the merits and on the motion of defendant U. S. Department of Energy (hereinafter "DOE") to dismiss or, in the alternative, for summary judgment. The Court will treat these motions as calling for a final determination on the merits. This memorandum constitutes the Court's findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52(a).

The Court has jurisdiction over the subject matter pursuant to the Emergency Petroleum Allocation Act of 1973 (hereinafter "EPAA"), 15 U.S.C. § 754(a)(1), which incorporates the judicial review provisions of Section 211 of the Economic Stabilization Act of 1970 (found as a note to 12 U.S.C. § 1904), 28 U.S.C. §§ 1331, 2201, and 2202.

*Factual Background*

This is an action for judicial review of a Decision and Order of the Office of Hearings and Appeals (hereinafter "OHA") of the U. S. Department of Energy, entitled *Mobil Oil Corporation*, 5 DOE ¶ 80,171 (Apr. 17, 1980).[1] A complete statement of the factual and procedural background of this case may be found in the Court's Memorandum of August 18, 1980, which, *inter alia*, ordered a preliminary injunction prohibiting the reclassification of the refineries of plaintiff Koch Refining Company (hereinafter "Koch") and plaintiff-intervenor Ashland Oil, Inc. (hereinafter "Ashland") under the Canadian Crude Oil Allocation Program (hereinafter "CAP"). *See Koch Refining Co. v. U. S. Department of Energy*, 497 F.Supp. 879 (D.Minn.1980). The facts adduced by the Court in that memorandum are herein incorporated by reference.

The matter is now before the Court for final judgment on the merits. The Court has carefully considered the extensive memoranda of the parties, the administrative record, the evidence and arguments proffered for its consideration at the preliminary injunction hearing, and is convinced that judgment should be entered in favor of Koch, Ashland, and the State of Minnesota.

*The Merits*

The Court finds that plaintiffs are entitled to prevail on the issue of whether the OHA erred in holding that the Economic Regulatory Administration (hereinafter "ERA") had no authority to consider equitable factors in redesignation determinations. The Court expresses no opinion at this time on the merits of any other issues in the case.

The CAP regulations grant the ERA authority to change initial priority designations. 10 C.F.R. § 214.34 provides in relevant part:

(a) *Supplemental affidavits and changes in initial designation.* Refiners and other firms that own or control priority refineries shall correct any errors contained in affidavits filed pursuant to Subpart D of this part by filing a supplemental affidavit pursuant to § 214.41(b). Affidavits shall be so supplemented to reflect any changes in the access of the refiner or other firm to alternative sources of crude oil. Based on information set forth in any such supplemental affidavit or in any affidavit filed after February 10, 1976, the DOE *may* change its initial priority designation as to a refinery or other facility, *may* determine that a particular refinery or other facility is no longer eligible to receive Canadian crude oil rights under this part or *may* make an initial priority designation as to that refinery or other facility. Any such action taken by the DOE under this paragraph (a) may be based, in whole or in part, on information available to the DOE from sources other than the affidavits filed pursuant to Subpart D of this part.

(emphasis supplied).

Plaintiffs contend, and the ERA determined, that this regulation allows the ERA to use its discretion in considering whether to change a priority designation. The federal defendants and Mobil argue that the ERA must reclassify a refinery once it obtains sufficient access to non-Canadian

---

1. The Decision and Order stated that "[t]his is a final Order of the Department of Energy of which any aggrieved party may seek judicial review." 5 DOE ¶ 80,171, at 80,789.

crude, the factor used in initial designations pursuant to 10 C.F.R. §§ 214.33 and 214.21. The interpretation of the regulation by the federal defendants and Mobil is plainly erroneous.[2]

■ As with any statute or regulation, the starting point is the commonly understood wording of the regulation itself. *Tenneco Oil Co. v. FEA*, 613 F.2d 298, 302 (Em.App.1979). It provides that the DOE "may" change its initial designation upon receiving supplemental affidavits. "May" is a permissive word, *Burglin v. Morton*, 527 F.2d 486, 488 (9th Cir. 1975), *cert. denied*, 425 U.S. 973, 96 S.Ct. 2171, 48 L.Ed.2d 796 (1976), and will be construed to vest discretionary power, unless the context of its use clearly indicates a purpose to use it in a mandatory sense. *United States v. Bowden*, 182 F.2d 251, 252 (10th Cir. 1950). *See Standard Oil Co. v. DOE*, 596 F.2d 1029, 1043 (Em.App.1978) (court found no circumstances compelling conclusion that "may" intended to be mandatory).

Presumptively, therefore, the ERA has discretion with respect to reclassification. If the supplemental affidavits show that a first-priority refinery now has access[3] to non-Canadian oil in an amount that would have warranted the initial designation of the refinery as second priority, the ERA *may* reclassify the refinery. But it is under no duty to do so.[4]

**2.** An agency interpretation of a regulation which is "plainly erroneous" must be overturned. *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Tenneco Oil Co. v. FEA*, 613 F.2d 298, 302 (Em.App. 1979).

**3.** The Court expresses no opinion as to the meaning of the term "access" in the CAP regulations.

**4.** In a related context, the OHA found that the word "may" as used in the Buy/Sell Program, 10 C.F.R. § 211.65(a)(5), indicated that the ERA has discretion to determine volumes of crude oil to be allocated to eligible refiners. As the OHA noted,

> had the agency wished to compel approval of the maximum crude oil allocation authorized under § 211.65(a)(5) to all small refiners qualifying under that section of the regulations,

■ The context of § 214.34 does not transform the permissive words of the regulation into a mandatory duty to reclassify based on the access standards used for initial designations. The regulation makes no reference to §§ 214.33 or 214.21, and one cannot assume that § 214.34 incorporates the standards of those sections. Moreover, the CAP regulations ordinarily use the term "shall" when a mandatory duty is imposed upon the DOE. *See* 10 C.F.R. §§ 214.31(a), (b), (i); 214.32(b), (d); 214.33(a), (b); 214.35. Where any term is employed in one part of a regulation and is excluded in another, it should not be implied where excluded. *Diamond Roofing Co., Inc. v. Occupational Safety & Health Review Commission*, 528 F.2d 645, 648 (5th Cir. 1976). This rule is clearly applicable when the words "shall" and "may" are used in the same set of regulations; "shall" imposes a mandatory obligation and "may" grants discretion. *Farmers' & Merchants Bank v. Federal Reserve Bank*, 262 U.S. 649, 662–63, 43 S.Ct. 651, 656, 67 L.Ed. 1157 (1923) (Brandeis, J.); *Bennett v. Panama Canal Co.*, 475 F.2d 1280, 1282 (D.C.Cir.1973); *Publix Oil Co. v. DOE*, CIVIL 2–80–73 (E.D.Tenn., July 19, 1980).

■ Indeed, when one reads the regulation against the background of the context and philosophy of the CAP, the conclusion is inescapable that the ERA must have discretion to consider equitable factors.[5] The

> the agency could have chosen to use the words "must" or "shall be required."
>
> *Sunland Refining Company*, 6 DOE ¶ 80,165 (Sept. 3, 1980), at 80,806.

**5.** The Court here does not reach the question of whether the OHA's interpretation of § 214.34 actually conflicts with the goals of the EPAA. The Court recognizes that the EPAA objectives are not necessarily mutually obtainable and that they must be balanced. *Mobil Oil Corp. v. DOE*, 610 F.2d 796, 801 (Em.App.1979), *cert. denied* 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980); *General Crude Oil Co. v. DOE*, 585 F.2d 508, 513 (Em.App.1978), *cert. denied*, 440 U.S. 912, 99 S.Ct. 1226, 59 L.Ed.2d 461 (1979); *Amtel, Inc. v. FEA*, 536 F.2d 1378, 1383 (Em. App.1976). Yet the agency should interpret its regulations in such a manner as to avoid a construction which brings the validity of the regulations into question, as the OHA has rec-

CAP was enacted pursuant to the EPAA and was designed to ameliorate the nation's, and this region's, severe shortage of crude oil. *See Twin City Barge & Towing Corp. v. Schlesinger*, 603 F.2d 197, 209 (Em. App.1979) (quoting House Report No. 94–340); *Pasco, Inc. v. FEA*, 525 F.2d 1391, 1394 (Em.App.1975). The purpose of the CAP is to provide the DOE with the "greatest degree of flexibility possible in order to cope with the present energy crisis." *Mobil Oil Corp. v. DOE*, CIVIL 79–6950 (S.D.N.Y., Aug. 7, 1980).[6] *See Placid Oil Co. v. FEA*, 465 F.Supp. 1199, 1204 (N.D.Tex.) (the "very nature" of the EPAA "contemplates substantial administrative flexibility"), *aff'd*, 600 F.2d 813 (Em.App.) (*per curiam*), *cert. denied*, 444 U.S. 928, 100 S.Ct. 268, 62 L.Ed.2d 184 (1979).

The need for ERA flexibility is illustrated by the facts of the instant case. At the preliminary injunction hearing, the testimony showed that Koch would reduce its output by between 15,000 and 18,000 barrels per day, even if it could obtain substitutes for Canadian oil, and that Ashland's probable situation would be similar. Such cutbacks would cause great and irreparable injury to the state and citizens of Minnesota. The resultant shortage of heating oil could lead to the closings or curtailments of use of many of the state's buildings, could reduce Minnesota's industrial output by about $1 billion, and could lead to the unemployment of approximately 70,000 persons. *See* 497 F.Supp. at 879. Common sense dictates that the ERA should have the flexibility to consider such equitable factors, and an interpretation of § 214.34 that would sanction such results is plainly erroneous.

Rather, the OHA should have interpreted § 214.34 in the way that is most in harmony with the goals of the EPAA. Agency interpretations of a statute should strive to carry out the congressional policy underlying the statute, *see Volkswagenwerk Aktiengesellschaft v. Federal Maritime Commission*, 390 U.S. 261, 273–75, 88 S.Ct. 929, 936, 19 L.Ed.2d 1090 (1968). The EPAA outlines nine objectives to be pursued by the DOE. The interpretation of § 214.34 advanced by the plaintiffs better meets a number of the statutory goals than does the OHA interpretation. These include:

(B) maintenance of all public services (including facilities and services provided by ... any State or local government ...);

   .    .    .    .    .

(D) ... to preserve the competitive viability of independent refiners, small refiners ...;[7]

(E) the allocation of suitable types, grades, and quality of crude oil to refineries in the United States to permit such refineries to operate at full capacity;

(F) equitable distribution of crude oil, residual fuel oil, and refined petroleum products at equitable prices among all regions and areas of the United States and sectors of the petroleum industry, including independent refiners, small refiners ... and among all users ...;

   .    .    .    .    .

(H) economic efficiency; and

(I) minimization of economic distortion, inflexibility, and unnecessary interference with market mechanisms.

---

ognized. *United Refining Company*, 6 DOE ¶ 80,145 (Aug. 21, 1980), at 80,728.

**6.** The OHA's Decision and Order considered by the court in the Southern District of New York stated,

[i]t is important that the *ERA* maintain enough *flexibility* in its Canadian Crude Oil Allocation Program to respond to changes in factual circumstances .... [A contrary] result would frustrate the effectuation of the statutory goal set forth in ... [the EPAA] to

provide for the *equitable* distribution of crude oil among all domestic refiners.

*Mobil Oil Corporation*, 4 DOE ¶ 82,049 (Dec. 10, 1979), at 84,646 (emphasis added).

**7.** The goal of protecting small and independent refiners has been recognized in several cases. *See Husky Oil Co. v. DOE*, 582 F.2d 644, 650 (Em.App.1978); *Mobil Oil Corp. v. FEA*, 566 F.2d 87, 96–97 (Em.App.1977); *Ashland Oil Co. of California v. FEA*, 389 F.Supp. 1119, 1126 (N.D.Cal.1975).

15 U.S.C. § 753(b)(1). Thus, when § 214.34 is juxtaposed with the goals of the EPAA, the most reasonable interpretation is one which allows the ERA discretion to forego reclassification when to do so would not advance the purposes of the statute. *Cf. Standard Oil Co. of Ohio v. FEA*, 612 F.2d 1291, 1296 (Em.App.1979) (DOE interpretation of regulation did not further EPAA goals).

Defendants posit a number of arguments in favor of the OHA interpretation and against that offered by the plaintiffs. First, they argue that the OHA's interpretation is entitled to significant deference. The Court is, of course, aware that ordinarily great weight should be given to an agency's interpretation of its own regulations. *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); *Pasco, Inc. v. FEA*, 525 F.2d 1391, 1400 (Em.App.1975). However, this principle does not justify following the OHA's interpretation in this case.[8]

Less deference need be paid to an agency interpretation when it does not comport with the conclusion dictated by established principles of statutory construction. *Weyerhaeuser Co. v. Costle*, 590 F.2d 1011, 1027 (D.C.Cir.1978); *Marathon Oil Co. v. Kleppe*, 556 F.2d 982, 985–86 (10th Cir. 1977); *Getty Oil Co. v. DOE*, 478 F.Supp. 523, 527 (C.D. Cal.1978). In this case, OHA's interpretation is at odds with the clear and understandable language of the regulation. *Marathon Oil Co., supra*. It "simply cannot be regarded as a defensible reading of the regulation in question," *Standard Oil Co. of Ohio v. FEA*, 612 F.2d 1291, 1297 (Em.App. 1979).

Also, as discussed *supra*, less deference is required when the agency interpretation is not grounded in the policy considerations underlying the statute authorizing

the regulation, *NLRB v. Brown*, 380 U.S. 278, 291–92, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965), and in the agency's expertise in explicating the policies. In this case, there is no indication that the OHA carefully considered the goals of the EPAA before issuing its interpretation of § 214.34, and the indicia of administrative expertise are absent.

Defendants next suggest that the proper avenue for the consideration of equitable factors is DOE's "exceptions" procedures, established pursuant to 42 U.S.C. § 7194(a). According to 10 C.F.R. § 205.55(b)(2), "[a]n application for an exception may be granted to alleviate or prevent serious hardship or gross inequity." Defendants argue that if the ERA may consider serious hardships and gross inequities in redesignation decisions, then the OHA, which hears exceptions requests, would have no exceptions responsibility.

As the Court has previously noted, *see* 497 F.Supp. at 879, defendants' analysis appears to put the cart before the horse. If § 214.34 must be read as according the ERA discretion to consider equitable factors, as the Court thinks it must, then there may be no need for the exceptions procedure with respect to redesignation decisions. Rather, an aggrieved party may simply appeal ERA decisions pursuant to relevant provisions of 10 C.F.R. § 205, just as Mobil appealed the ERA's decision in this matter. If anything, it would appear to be most efficient under the CAP regulatory scheme to vest discretion in the agency directly administering the CAP, the ERA, rather than to mandate that all matters requiring the exercise of discretion be taken to what is essentially an appellate body, the OHA.

Third, defendants claim that plaintiffs' interpretation of § 214.34 is fatally flawed because the section contains no standards for refinery redesignation. But the ERA can and must use the goals of the EPAA, 15

---

**8.** As the court noted in *Standard Oil Co. v. DOE*, 596 F.2d 1029, 1056 (Em.App.1978),

Deference to an agency's "interpretation", however, is not a hard and fast rule. The weight to be given to an administrative interpretation depends upon "the thoroughness evident in its consideration, the validity of its

reasoning, its consistency with earlier and later pronouncements, and all of those factors which give it power to persuade, if lacking power to control". *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).

U.S.C. § 753(b)(1), as its criteria for reclassification. Also, defendants' argument is deserving of little weight in light of the fact that the standards used in OHA exceptions proceedings—"serious hardship or gross inequity"—are neither specific nor well-defined.

Finally, defendants state that it is irrational not to use the same standards in redesignation as were used in initial classification decisions, and that a consideration of equitable factors would render meaningless the criteria for initial designations. *See* Decision and Order, 5 DOE ¶ 80,171, at 80,-775. Defendants note that the OHA has determined that equitable factors may not be taken into account at the initial designation stage. *Mobil Oil Corporation*, 4 FEA ¶ 80,541 (Sept. 24, 1976), at 80,664.

In the Court's view, allowing the ERA discretion in redesignation is not inconsistent with a policy of allowing the ERA no discretion at the initial designation point.[9] The initial classifications were of necessity made on the basis of generalizations that obviated the need for a massive, refinery-by-refinery analysis. At that stage, the CAP regulatory scheme had not yet begun to function. However, with respect to the reclassification of a single refinery after the program has been operating for some time, a case-by-case analysis, taking into account all equitable factors and circumstances, is both practical and desirable. The ERA has now had ample experience in administering the CAP and has access to information and affidavits accumulated over a period of time. It is now in a much better position than when the CAP was first implemented to determine relative hardships and the extent to which possible reclassification would be consistent or inconsistent with the goals of the CAP and the EPAA.

In sum, OHA's interpretation of § 214.34 is plainly erroneous. Its decision to reclassify Koch and Ashland must be reversed because the OHA failed to recognize that the ERA must be allowed to consider all relevant equitable factors. Thus, the matter must be remanded to the OHA.

9. The Court here presumes, without deciding, that equitable factors may not be considered in

*Order for Judgment*

Accordingly,

IT IS ORDERED that:

1. The motion of defendant-intervenor Mobil Oil Corporation requesting that the Court enter a final judgment on the merits in this matter be, and hereby is, granted.

2. The motion of defendant U.S. Department of Energy to dismiss or, in the alternative, for summary judgment, be, and hereby is, denied.

3. The OHA Decision and Order, dated April 17, 1980, in the case entitled *Mobil Oil Corporation*, No. BEA–0035, *et al.*, 5 DOE ¶ 80,171 (Apr. 17, 1980), be, and hereby is, reversed.

4. This matter be, and hereby is, remanded to the U.S. Department of Energy Office of Hearings and Appeals for further proceedings not inconsistent with this Memorandum and Order.

making an initial designation, as the FEA held in *Mobil Oil Corporation*.