KOCH REFINING COMPANY, Ashland Oil, Inc., and State of Minnesota, Plaintiffs-Appellees,

v.

UNITED STATES DEPARTMENT OF ENERGY, and Mobil, Oil Corporation, Defendants-Appellants.

Nos. 8–10, 8–11.

Temporary Emergency Court of Appeals.

Argued June 30, 1981.

Decided Aug. 21, 1981.

See also, D.C., 497 F.Supp. 879.

Thomas A. Schweitzer, Dept. of Energy, Washington, D. C., with whom Nancy C. Crisman and Paul G. Wallach, Washington, D. C., were on the brief, for appellant Dept. of Energy.

Michael J. Madigan, Akin, Gump, Strauss, Hauer & Feld, Washington, D. C., with whom Edward L. Rubinoff and David A. Holzworth, Washington, D. C., and William C. Streets, Fairfax, Va., and Warren H. Greene, Jr., New York City, of counsel, were on the brief for appellant Mobil Oil Corp.

James Hamilton, Ginsburg, Feldman, Weil & Bress, Washington, D. C., Joe A. Walters, O'Connor & Hannan, Minneapolis, Minn., with whom William E. Flynn, Minneapolis, Minn., James B. Loken and John F. Beukema, Faegre & Benson, Minneapolis, Minn., and John Dee Roper, Koch Refining Co., Wichita, Kan., and Robert H. Compton, Ashland Petroleum Co., Ashland, Ky. of counsel, were on the brief for appellees Koch Refining Co. and Ashland Oil, Inc.

Dwight S. Wagenius, William P. Donohue, and James Lackner, Sp. Asst. Attys. Gen., and Warren R. Spannaus, Atty. Gen., St. Paul, Minn., were on the brief, for appellee State of Minnesota.

Before LARSON, PECK and POINTER, Judges.

JOHN W. PECK, Judge.

In 1974 Canada announced that it would reduce and eventually terminate exports of crude oil to the United States. In response to this announcement, the Federal Energy Administration (FEA), predecessor to the Department of Energy (DOE), promulgated the Canadian Crude Oil Allocation Program (CAP), 10 C.F.R. §§ 214.1 et seq. CAP's stated purpose was the mitigation of the adverse effects of reductions in Canadian crude oil exports to U. S. firms that were dependent on Canadian crude oil.[1]

Pursuant to CAP, the Economic Regulatory Administration (ERA), that arm of DOE with responsibility for administering the allocation of crude oil, allocated Canadian crude oil to two categories of refineries. The initial determinations of the category status of various refineries were made in accordance with 10 C.F.R. §§ 214.21 and 214.33. Section 214.21 defined a "first priority refinery" as a refinery whose base period crude oil "runs to stills" including at least 25% Canadian crude oil and whose volume of Canadian oil that constituted 25% of the runs was not "currently replaceable" with non-Canadian oil by reason of "lack of access to" either pipelines with "adequate" current surplus or through "adequate" port facilities. A second priority refinery was defined as any refinery that processed Canadian crude oil during the base period but was not a first priority refinery. First priority refineries under CAP were allocated a larger share of available Canadian oil than were second priority refineries. Canadian

---

1. The CAP expired on March 31, 1981, pursuant to the President's Decontrol Order of January 28, 1981. 46 Fed.Reg. 9909 (Jan. 30, 1981).

crude oil was significantly less expensive than oil available from alternative sources. Appellees Koch Refining Co. and Ashland Oil, Inc. were designated first priority refineries under CAP. Appellant Mobil Oil was designated second priority.

Changes in CAP priority status subsequent to initial priority determinations were governed by 10 C.F.R. § 214.34(a), which provided:

> *Supplemental affidavits and changes in initial designation.* Refiners and other firms that own or control priority refineries shall correct any errors contained in affidavits filed pursuant to Subpart D of this part by filing a supplemental affidavit pursuant to § 214.41(b). Affidavits shall be so supplemented to reflect any changes in the access of the refiner or other firm to alternative sources of crude oil. Based on information set forth in any such supplemental affidavit or in any affidavit filed after February 10, 1976, the FEA *may* change its initial priority designation as to a refinery or other facility, *may* determine that a particular refinery or other facility is no longer eligible to receive Canadian crude oil rights under this part or *may* make an initial priority designation as to that refinery or other facility. Any such action taken by the FEA under this paragraph (a) may be based, in whole or in part, on information available to the FEA from sources other than the affidavits filed pursuant to Subpart D of this part. [Emphasis added.]

Initial affidavits filed pursuant to Subpart D were required to certify detailed information concerning the subject refinery's historical use of non-Canadian crude oil, characteristics of such supplies, and availability and utility of such supplies. Initial affidavits were also required to describe in detail all transportation facilities that might be used by the applicant refinery to obtain non-Canadian oil supplies, and "any factors that might affect.or limit utilization thereof to transport crude oil." The affidavits were also to include descriptions of any "transportation facilities or methods not considered economically feasible . . . and the reasons therefor."

In 1978 ERA conducted a hearing to determine whether Koch and Ashland should be reclassified as second priority. At the conclusion of that hearing, ERA determined not to reclassify Koch and Ashland "because, on the balance, it appears that the disadvantages of reclassifying the Koch and Ashland refineries outweigh any discernible benefits of such regulatory action." 43 Fed.Reg. 28537. ERA noted that reclassification of Koch and Ashland would simply permit Chicago area refineries with greater access to Gulf Coast oil supplies via pipelines to receive more Canadian oil while the two Minnesota refineries would receive less Canadian oil and be forced to seek supplies via barges from the south. While noting that the definition of a first priority refinery, 10 C.F.R. § 214.21, would take account of the availability of non-Canadian oil barged to Minnesota, ERA nonetheless concluded that § 214.34 afforded ERA the discretion to maintain the first priority status of Koch and Ashland, although they might be able to barge alternative oil supplies from the south, "if that result appears justified under all of the circumstances."

Mobil, as one of the Chicago area refineries that would have received more Canadian oil if Koch and Ashland had been reclassified, appealed ERA's decision to DOE's Office of Hearings and Appeals (OHA), that arm of DOE with responsibility to issue decisions regarding administrative appeals of DOE orders. The State of Minnesota was permitted to intervene. After hearing and argument, OHA reversed the judgment of ERA on the ground that ERA had no "discretion to consider equitable factors in determining first priority status" and that "ERA erred in basing its decision to maintain the first priority status of the Minnesota refineries on factors other than their practical access to replacement crude oil from non-Canadian sources." OHA concluded:

> The regulatory language contained in Section 214.34 does not support the ERA position. ERA seems to suggest that because the term "may" is used in Section 214.34, redesignation is not mandatory

even if the refinery has sufficient access to non-Canadian crude oil. That interpretation is incorrect. The term "may" is used to indicate that the ERA may on the basis of the information available to it take one of three actions. If "shall" had been used instead of "may" the provision would have been meaningless—it would have directed the ERA to take three contradictory actions. Thus, the term "may" was not used to give ERA discretion to ignore the specific criteria set forth in the CAP regulations, but rather was used to convey the options available to ERA when a refiner's access to non-Canadian crude oil changes. Although the provision states that the ERA may base its decision on information it obtains from sources other than the affidavits, the provision does not state, nor in any way suggest, that the alternative sources of information should relate to anything other than access to non-Canadian crude oil.

5 DOE ¶ 80,171. Thus, OHA refused to consider "equitable" factors in favor of maintaining the questioned priorities, found that Koch and Ashland now had access to sufficient non-Canadian oil to take them out of the first priority definition, and ordered ERA to reclassify Koch and Ashland.

Koch filed suit against DOE in district court challenging OHA's order. Ashland and Mobil intervened. Minnesota filed a separate suit challenging the OHA order. Motions by Mobil and DOE to dismiss for improper venue were denied. Mobil intervened in Minnesota's suit, and motions by Mobil and DOE to dismiss that suit for lack of standing were denied. A motion to consolidate the cases was granted.

The district court granted a preliminary injunction prohibiting reclassification. DOE filed a motion to dismiss for failure to exhaust administrative remedies, or in the alternative for summary judgment. Koch, Ashland and Mobil each moved for judgment on the merits. The district court entered judgment for Koch, Ashland and Minnesota solely on the ground that OHA had committed plain error in concluding the

ERA had no discretion under § 214.34 to consider equitable factors in reclassification decisions. The district court concluded that OHA's interpretation of § 214.34 was inconsistent with the clear language of that regulation. The court did not decide any other issues before it. The district court 504 F.Supp. 593, reversed and remanded to DOE, and both Mobil and DOE have appealed.

The primary question raised on appeal is whether the district court erred in reversing the OHA order on the ground that OHA plainly erred in interpreting 10 C.F.R. § 214.34. Appellants Mobil and DOE have argued that the district court erred in reversing the OHA decision interpreting § 214.34 because OHA's decision was within the authority of the agency and was supported by substantial evidence. The appellants contend that this two-pronged standard of review is mandated by Section 211(d) of the Economic Stabilization Act (ESA), 12 U.S.C. § 1904 *note*, as incorporated by Section 5 of the Emergency Petroleum Allocation Act (EPAA), 15 U.S.C. § 754.

■ Section 211(d) of the ESA is clearly inapposite to the issue here. That section provides that "no order [of the agency] . . . shall be enjoined or set aside" unless such "order is in excess of the agency's authority or is based upon findings which are not supported by substantial evidence." The district court's decision was based solely upon the question of law whether OHA properly interpreted § 214.34 of CAP. That interpretation by OHA required no determination of fact, and the review of that interpretation raised no issue concerning OHA's or DOE's authority. Consequently § 211(d) is inapplicable to the purely legal question whether OHA properly interpreted § 214.34 of CAP. *See, Getty Oil Co. v. DOE*, 478 F.Supp. 523, 527 (C.D.Cal.1978).

■ Where a reviewing court seeks to determine whether an administrative agency properly interpreted its own regulation, the agency's interpretation is entitled to great deference. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Tenneco Oil Co. v. FEA*, 613 F.2d

298, 302 (TECA 1979). However, the reviewing court is not "bound by the agency's interpretation; an interpretation which is plainly erroneous or inconsistent with the regulations must be overturned." *Tenneco, supra.* Thus, in the present case, the district court properly applied the plain error standard in reviewing OHA's interpretation of § 214.34. The question now before this Court is whether the district court's conclusion that OHA's interpretation was plainly erroneous was correct.

Appellants have intertwined two lines of argument that OHA's interpretation of § 214.34 is correct and was erroneously overturned by the district court. These arguments are mutually exclusive, and must be considered as alternatives. On the one hand, the appellants contend that the OHA correctly held that the language of § 214.34, when read in the context of CAP, is clearly mandatory, requiring ERA to take one of the alternative actions listed in § 214.34 whenever ERA had information showing a change in a refinery's access to non-Canadian oil. On the other hand, appellants contend that OHA's interpretation of § 214.34 is entitled to deference from the courts. The well established principle of judicial deference to an agency's interpretation of its own regulation is applicable only when there is some ambiguity in the regulation that requires the application of the agency's expertise to clarify the meaning of the regulation. *Tenneco, supra.* Obviously, appellants cannot have it both ways. Either § 214.34 is ambiguous on the question whether the ERA is required to take one of the enumerated actions under certain delineated circumstances, or it is not. If the regulation has a "plain and sensible meaning," then that meaning will be given effect by the courts and no deference will be given to any agency interpretation that is clearly contrary to that meaning. *Hart v. McLucas,* 535 F.2d 516, 520 (9th Cir. 1976). *See also, Tenneco, supra.* In order to determine whether the OHA interpretation of § 214.34 was entitled to deference or whether that regulation had a plain meaning that must be given effect, we must study the language of the regulation.

As District Judge MacLaughlin stated in his thorough opinion in the present case:

"May" is a permissive word, *Burglin v. Morton,* 527 F.2d 486, 488 (9th Cir. 1975), cert. denied, 425 U.S. 973, 96 S.Ct. 2171, 48 L.Ed.2d 796 (1976), and will be construed to vest discretionary power, unless the context of its use clearly indicates a purpose to use it in a mandatory sense. *United States v. Bowden,* 182 F.2d 251, 252 (10th Cir. 1950). *See Standard Oil Co. v. DOE,* 596 F.2d 1029, 1043 (TECA 1978) (court found no circumstances compelling conclusion that "may" intended to be mandatory).

Presumptively, therefore, the ERA has discretion with respect to reclassification. If the supplemental affidavits show that a first-priority refinery now has access to non-Canadian oil in an amount that would have warranted the initial designation of the refinery as second priority, the ERA *may* reclassify the refinery. But it is under no duty to do so. [footnotes omitted].

Judge MacLaughlin also stated that the context of § 214.34 did not transform the permissive word "may" into a mandatory duty to reclassify Koch and Ashland. He noted that the CAP regulations use both the words "may" and "shall" and that the use of both words in the same set of regulations implies that "shall" was used whenever a mandatory duty was imposed, while "may" was used to grant discretion. Furthermore, Judge MacLaughlin noted that the "context" of the CAP regulations included the administrative flexibility inherent in the EPAA, and that this also supported the presumption that "may" was used to indicate discretion.

Appellants have argued that "may" was gramatically necessary in the sentence structure of § 214.34(a) to indicate that ERA was required to take one of three alternative actions when it received information that a refinery's access to non-Canadian oil had changed. This argument reiterates the rationale of OHA in its decision stating, "If 'shall' had been used instead of 'may' the provision would have been mean-

ingless—it would have directed the ERA to take three contradictory actions." 5 DOE ¶ 80,171.

■ The most cursory reading of § 214.34 shows OHA's statement and the position taken by the appellants to be nonsense. Clearly, substituting the word "shall" for the word "may" each time that the latter appears in § 214.34(a) would not, as OHA stated, cause that section to direct ERA "to take three contradictory actions." The three actions listed in § 214.34(a) are connected by the disjunctive "or". Had the word "shall" been used rather than "may", then the ERA would unequivocally have been directed by § 214.34 to take *one* of the three actions upon receiving certain information. The fact is that "may" was not syntactically necessary to show that the actions listed in § 214.34 were alternatives. Therefore, the use of the permissive word rather than the mandatory word must, by any reasonable construction, be understood to grant permission rather than to impose a duty.

■ The fact that OHA so blatantly misread the sentence structure of § 214.34 should itself quell any argument that OHA's interpretation of that section is entitled to deference. However, OHA's misreading did not end with the ignoring of the word "or". In interpreting § 214.34, OHA stated that the section did not "in any way suggest" that the supplemental information received under § 214.34 and considered in making redesignation decisions "should relate to anything rather than access to non-Canadian crude oil." Once again, the unambiguous language of § 214.34 belies that conclusion. Section 214.34 first states a general requirement that refineries submit supplemental affidavits correcting "any errors contained in affidavits filed pursuant to Subpart D," and second gives a specific requirement that such supplemental affidavits reflect any changes in access to alternative sources of crude oil. The section then states that ERA "may" act based on the

information contained in the supplemental affidavits. Thus, the plain language of § 214.34(a) permits ERA to consider information correcting "any errors" in affidavits filed pursuant to Subpart D, affidavits that were required to contain detailed information regarding many things other than access to alternative oil, including transportation facilities considered economically unfeasible, characteristics of the alternative oil, the ability of the refinery to process that oil, and "any factors" that might limit or affect transportation of the alternative oil. Again, OHA's reading of § 214.34 is inconsistent with the unambiguous language of that section and is therefore clearly erroneous.

■ We have considered appellants' remaining arguments in support of OHA's interpretation. Given the clear, non-technical and unambiguous language of § 214.34(a), we find these arguments unpersuasive. OHA's interpretation is inconsistent with that plain language. We conclude that the district court properly decided that the OHA's interpretation was plainly erroneous and that § 214.34 granted ERA discretion in deciding whether to implement any of the alternatives listed in that section.

■ Appellants have argued that appellees' recourse to the district court for review of the OHA decision was improper because a further administrative step—application for "exception relief"—was available.[2] Appellants contend that appellees' failure to pursue this course constitutes a failure to exhaust administrative remedies and should have barred appellees' suit in the district court.

Appellants' argument is unpersuasive. The OHA's interpretation of § 214.34 was a final decision of the DOE regarding the interpretation of that section whether or not appellees could have obtained exception relief from the application of that decision. OHA's order itself concluded with the state-

**2.** "Exception relief" describes DOE's broad authority to grant specific adjustments to its regulations in order "to alleviate or prevent seri-

ous hardship, gross inequity or unfair distribution of burdens." *See,* 10 C.F.R. § 205.55(b)(2) and 42 U.S.C. § 7194(a).

ment, "This is a final order of the Department of Energy of which any aggrieved party may seek judicial review." We conclude that appellees were not required to seek exception relief under these circumstances.

■ The final question raised by appellants that merits comment is whether the State of Minnesota had standing to sue. Because we hold that Minnesota's action was made moot by the expiration of the CAP subsequent to the decision of the district court, we do not reach the question whether Minnesota had standing. Minnesota sought only declaratory and injunctive relief from the application of § 214.34 as interpreted by OHA. The expiration of CAP has made the relief sought unnecessary and would render any decision by this Court regarding Minnesota's suit merely an advisory opinion.

We have considered the remaining arguments advanced by the appellants and find them to be without merit. For the reasons stated above, the judgment of the district court reversing the order of the Office of Hearings and Appeals is AFFIRMED. District court civil docket number 4–80–315, *Minnesota v. Doe*, 497 F.Supp. 879, is REMANDED to the district court with directions to dismiss.

POINTER, Judge, concurring in part, dissenting in part.

The regulations are, in my view, ambiguous as to what factors, if any, other than

dependency may be taken into account in deciding whether an initial priority designation should be modified on the basis of later events. I would, therefore, defer to the interpretation of those regulations by the agency charged with their promulgation and enforcement—an interpretation I find to be reasonable and logical. That the interpretation given the regulation by the district court and the majority of this court is also reasonable and logical is not a sufficient basis to disturb that of the agency, acting through the Office of Hearings and Appeals.

Accordingly, I would reverse the district court in the case docketed as 4–80–292, with directions to dismiss the action brought by Koch. This dismissal would, of course, be without prejudice to the rights of Koch and Ashland to seek "exception" relief under 10 C.F.R. § 205.55(b)(2) in order "to alleviate or prevent serious hardship, gross inequity or unfair distribution of burdens." See 42 U.S.C. § 7194(a).*

I agree with the disposition of TECA No. 8–11, brought by the State of Minnesota.

---

* As I read the order of the district court being affirmed by this court, a decision in the OHA favorable to Koch and Ashland is not being mandated; rather, the OHA is being directed to conduct further proceedings consistent with a principle that all relevant equitable factors are to be considered. It is problematical whether the approach I believe to be correct—permitting the controversy to proceed under an application for "exception" relief—would produce any different result from that of the district court. I have no doubt but that procedures could be adopted to utilize at a hearing on such an application the materials already before the OHA on the existing administrative appeal.