NATIONAL DISTILLERS AND CHEMICAL CORPORATION and National Hydrocarbons, Inc., Plaintiffs-Appellants,

v.

DEPARTMENT OF ENERGY and Charles W. Duncan, Secretary of Energy, Defendants-Appellees.

No. 3–24.

Temporary Emergency Court of Appeals.

Argued April 10, 1981.

Decided Oct. 9, 1981.

Edward J. Ross, Breed, Abbott & Morgan, New York City, with whom Michael A. Small, New York City, of the same firm; Charles F. Richards, Jr., of Richards, Layton & Finger, Wilmington, Del., and John P. Mathis of Baker & Botts, Washington, D. C., were on the brief for plaintiffs-appellants.

Brenda G. Goranflo, Dept. of Justice, Washington, D. C., with whom Alice Daniel, Asst. Atty. Gen., C. Max Vassanelli and Thomas Millet of the Dept. of Justice, Don W. Crockett of the Dept. of Energy, Washington, D. C., were on the brief for defendants-appellees.

Before GIGNOUX, BONSAL and WEIGEL, Judges.

PER CURIAM:

Plaintiffs-Appellants, National Distillers and Chemical Corporation and its wholly-owned subsidiary National Hydrocarbons, Inc. (hereinafter collectively referred to as "Distillers") appeal from the district court's order dismissing their complaint and from the district court's denial of their motion for relief from the prior order (498 F.Supp. 707 (1980)). The district court found that Distillers had not exhausted its administrative remedies and therefore the matter was not ripe for adjudication. We affirm.

Distillers operates a gas processing and petrochemical plant at Tuscola, Illinois which extracts ethane from a "wet" natural gas stream supplied by pipeline. Distillers uses the ethane to make polyethelene and other products. Distillers also converts other portions of the natural gas stream into butane and propane which it then sells to Phillips Petroleum Company, which in turn sells the butane and propane to its own customers. Historically, the price paid by Phillips to Distillers has been a percentage of the revenues Phillips receives on the sale of butane and propane to its customers.

In 1974, the Federal Energy Administration ("FEA"), predecessor to the Department of Energy ("DOE") pursuant to the Emergency Petroleum Allocation Act ("EPAA"), 15 U.S.C. § 751, *et seq.*, promulgated regulations that governed the maximum price at which Distillers could sell propane and butane to Phillips. *See* 10 C.F.R. Part 212, Subpart K. The maximum

price that Distillers could charge depended on whether its sales to Phillips were "first sales" or "net-back sales." Believing that its sales to Phillips were net-back sales, Distillers charged Phillips prices allowable under the net-back sales regulation.

Prior to initiating an audit of Distillers in 1978, DOE personnel informed Distillers of their preliminary view that Distillers' sales to Phillips should have been treated as first sales under Subpart K and that Distillers could apply for a formal interpretation ("Interpretation") pursuant to 10 C.F.R. Part 205, Subpart F. The audit proceeded and Distillers applied to DOE's General Counsel for an Interpretation.

In May 1979, following completion of the audit, DOE issued to Distillers a Notice of Probable Violation ("NOPV"). The NOPV expressed the view of the enforcement personnel that Distillers' sales to Phillips should have been classified as first sales and that, therefore, there was reason to believe that Distillers had overcharged Phillips by approximately seventy-two million dollars. The NOPV also informed Distillers regard-. ing the penalties and sanctions provided in 10 C.F.R. § 205.203.

On June 15, 1979, approximately two weeks after the issuance of the NOPV, DOE's General Counsel dismissed Distillers' request for an Interpretation, stating that "the issues which you have raised in your request are best resolved in connection with the administrative procedures designed specifically for consideration of an NOPV."

■ Distillers instituted this action in the district court approximately two months after its request for an Interpretation had been dismissed by DOE. Distillers contended that DOE was required to respond to its application for an Interpretation. We agree with the district court that since administrative proceedings were pending in the DOE, it was not required to issue an Interpretation in response to Distillers' request. Distillers urges that in this particular situation DOE should be required to issue an Interpretation because of the threat of continuing interest and penalties in the event that its sales to Phillips are

deemed to be first sales and not net-back sales. However, if there was a threat, it no longer exists. On January 30, 1981 President Reagan issued Executive Order 12287, 46 Fed.Reg. 9909, decontrolling crude oil and refined petroleum products. This Order exempts all crude oil and refined petroleum products from the price and allocation controls adopted pursuant to the EPAA. Thus the propane and butane sold by Distillers to Phillips are no longer subject to the price controls imposed by 10 C.F.R. Part 212, Subpart K and Distillers is no longer threatened with further daily penalties for possible violations of Subpart K.

■ It appears that during the proceedings before the district court and before this Court, administrative proceedings are continuing before the DOE in connection with the NOPV. However, there is no outstanding final binding order and the proceedings have not been concluded. Therefore, it is clear that Distillers has not exhausted its administrative remedies.

For the foregoing reasons, the district court dismissed the proceeding, finding that Distillers' complaint did not present a "case or controversy" ripe for judicial resolution and that judicial review may not be had until the administrative proceedings are completed. We agree.

The dismissal below was without prejudice to Distillers' right to seek judicial review if a final binding order is issued by DOE. *See* Section 503 of the Department of Energy Organization Act, 42 U.S.C. § 7193. It is possible that upon review of the preliminary assessments contained in the NOPV, DOE may modify or withdraw some of them. Such modification could well obviate the need for judicial review. *See McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969). In a recent decision, *Energy Cooperative, Inc. v. DOE*, 659 F.2d 146 (1981), we held that the existence of such a likelihood requires that administrative remedies first be exhausted: "Exhaustion should be required ... (3) when an agency could correct an error on its own volition obviating

the need for judicial intervention altogether." *Id.* at 5. In another recent decision, *Hawthorne Oil and Gas Corp. v. DOE*, 647 F.2d 1107 (1981), we again underlined the importance of a party's first exhausting its administrative remedies before resorting to the courts.

Distillers, however, contends that Section 207(b) of the Economic Stabilization Act, 12 U.S.C. § 1904 note, confers upon it a right to the requested Interpretation. The Section provides in part:

> "Any agency authorized by the President to issue rules, regulations, or orders under this title shall, in regulations prescribed by it, establish procedures which are available to any person for the purpose of seeking an interpretation, modification, or rescission of, or seeking an exception or exemption from, such rules, regulations, and orders."

Distillers also relies upon 10 C.F.R. § 205.-85(a) (as revised), which provides that "an interpretation may be issued after consideration of the request for interpretation and other relevant information received or obtained during the proceeding."

 We find that these provisions do not require DOE to issue an Interpretation, but, on the contrary, establish that DOE may decline to do so if the matter is the subject of administrative review and action. The language and administrative history of Section 205.85(a) strongly suggest that the General Counsel possesses full discretion to decide, "after consideration of the request . . . and other relevant information," whether to issue an Interpretation. *See Koch Refining Co. v. DOE*, 658 F.2d 799 (1981), slip op. at 8–9 ("may" is permissive language used in a regulation to grant discretion).

Prior to its amendment in 1978, Section 205.85(a) provided, "Upon consideration of the request for interpretation and other relevant information . . ., the General Counsel or a Regional Counsel shall issue a written opinion." 39 Fed.Reg. 35499. The substitution of "may" for "shall" in the amended version appears to have been a purposeful change necessitated by the re-structuring of the appeals procedure in Subpart F. Under this restructuring, the DOE eliminated administrative appeals of interpretations as "unnecessary and inappropriate," *see* 43 Fed.Reg. 2729. Accordingly, 10 C.F.R. § 205.86 was amended in 1978 to provide that "There is no administrative appeal of an interpretation." 43 Fed.Reg. 14436–37. Thus, although General Counsel may reconsider an issued interpretation upon the request of a party, 10 C.F.R. § 205.85(f)(1), direct judicial review of interpretations is now available. *See Atlantic Richfield Co. v. Federal Energy Administration*, 556 F.2d 542, 552–53 (TECA 1977).

It is apparent that the new appeals procedure applicable to interpretations removes from the agency the authority to review its interpretations and instead provides for almost immediate judicial review. A party might easily short-cut an administrative enforcement proceeding if it could demand and receive at will an interpretation, from which it could seek immediate judicial review.

 Where, as here, the agency investigation was already underway at the time a request for Interpretation was made, we believe that the agency could dismiss the request for an Interpretation and complete its investigation. Issuance of an NOPV merely initiates the DOE enforcement process and represents only a preliminary agency assessment, not a final determination concerning a violation. 10 C.F.R. § 205.-191(g). Indeed, as the district court noted, before the terms of an NOPV are deemed final, they receive independent administrative review at three separate levels. *See Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

The judgment of the district court is AFFIRMED.