**KICKAPOO OIL COMPANY, INC.,**
Plaintiff-Appellant,

v.

**MURPHY OIL CORPORATION,**
Defendant-Appellee.

No. 7–14.

Temporary Emergency Court of Appeals.

Argued Oct. 21, 1985.

Decided Nov. 21, 1985.

William H. Bode, Spriggs, Bode and Hollingsworth, Washington, D.C., with whom John E. Varnum, Donald W. Fowler and Thomas M. Parry, were on briefs for plaintiff-appellant.

Edward L. Rubinoff, Akin, Gump, Strauss, Hauer and Feld, Washington, D.C., with whom R. Bruce McLean, and Merrill S. Spiegel, of the same firm; Donald L. Heaney and Michael J. Lawton, Isaksen, Lathrop, Esch, Hart and Clark, Madison, Wis., and W. Bayless Rowe, El Dorado, Ark., of counsel, were on brief for defendant-appellee.

Thomas C. Newkirk, Larry P. Ellsworth and Floyd I. Robinson, Washington, D.C., were on brief for amicus curiae, Dept. of Energy.

Before GARZA, WESLEY E. BROWN and THORNBERRY, Judges.

THORNBERRY, Judge.

Kickapoo appeals the district court's judgment dismissing its overcharge claim against Murphy. It complains that the district court erred by granting Murphy's motion in limine to exclude Kickapoo's analysis of alleged overcharges. Specifically, Kickapoo argues that the district court erred in holding that the Equal Application/Deemed Recovery Rule, 10 C.F.R. § 212.83(h) (1981) required Murphy's deemed recoveries to be calculated on a pricing period basis. Finding no error, we affirm.

## I. BACKGROUND

A. Regulatory

In November 1973, Congress passed the Emergency Petroleum Allocation Act, 15 U.S.C.A. §§ 751 *et seq.* (1976 & Supp.1985), to stabilize the petroleum industry in this country. The Department of Energy (hereafter DOE) and its predecessor agencies promulgated regulations designed to implement the provisions of the Act. As this

Court noted in *McWhirter Distributing Co. v. Texaco*, 668 F.2d 511, 516 (Temp. Emer.Ct.App.1981), "A basic objective of those regulations was to maintain the supplier/purchaser relationship that existed in 1972–73."

The Mandatory Petroleum Price Regulations, 10 C.F.R. pt. 212 (1981), set out specific pricing rules to effect that objective. Under the refiner price rule, the maximum allowable price a refiner could charge for a particular product consisted of (1) the price that refiner charged that class of purchaser for the product on May 15, 1973 *plus* (2) an increased cost increment to reflect increased costs incurred by the refiner since May 1973. 10 C.F.R. §§ 212.82, 212.83(a) (1981). The regulations did not require, however, that a refiner charge its maximum allowable price. In times of ample supply of crude oil and intense competition among refiners, for example, a refiner could set its price below its maximum allowable by not passing through some of its increased costs. Instead of losing those increased costs not charged, the refiner was permitted to "bank" them. 10 C.F.R. § 212.83(e) (1981). The regulations allowed the refiner to allocate its bank of unrecovered increased costs among its classes of purchasers by incorporating previously banked increased costs into its subsequent maximum allowable selling prices.

Refiners did not have unbridled freedom in passing through their banked increased costs to different classes of purchasers; "DOE sought to distribute the burden of these increased costs as widely and uniformly as feasible." *McWhirter*, 668 F.2d at 516. Toward this end, the Equal Application/Deemed Recovery Rule (hereafter EA/DRR) penalized the refiner that charged less than its maximum allowable price and applied unequal increased cost increments in its selling prices to different classes of purchasers. In upholding the EA/DRR against a claim of procedural invalidity in *Mobil Oil Corporation v. De-*

*partment of Energy*, 728 F.2d 1477 (Temp. Emer.Ct.App.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 3545, 82 L.Ed.2d 849 (1984), this Court described the mechanics of the rule:

> Under the deemed recovery rule, then, the refiner had to pass through increased product costs uniformly among all classes of purchaser or suffer a cost recovery penalty. Specifically, each month the refiner was required to compute its bank of unrecovered costs as though it had charged all classes of purchaser the largest increment of increased costs it charged to any one class of purchaser, even though, in fact, it did not. If a refiner applied increased costs unequally, thus, it had to reduce its bank of previously unrecouped costs by an amount that was larger than the amount of increased costs actually recouped. The refiner, that is, was 'deemed' to have recovered costs it, in fact, did not. By penalizing selective price increases, therefore, the deemed recovery rule provided an economic incentive for equal pass through of increased product costs in actual selling prices.

*Id.* at 1483.

B. District Court Proceedings

From 1973 through January 1981, Kickapoo purchased approximately 252 million gallons of motor gasoline from Murphy. In October 1978, Kickapoo filed suit against Murphy alleging, *inter alia*, that Murphy had applied higher increased costs to certain classes of purchasers than to others, but failed to reduce its banks of unrecouped increased costs accordingly. Consequently, Kickapoo argued that Murphy improperly calculated its maximum allowable prices for subsequent months, resulting in overcharges to Kickapoo.[1]

After extensive discovery, the district court set trial for late 1984. In a motion in limine, Murphy argued that Kickapoo's ex-

---

1. The alleged overcharges for which Kickapoo seeks damages span from September 1, 1974 (when the Equal Application/Deemed Recovery Rule became effective, *see* 39 Fed.Reg. 32306

(September 5, 1974)) until January 1981 (when Executive Order No. 12287 decontrolled crude oil and refined petroleum products).

pert had erroneously calculated Murphy's deemed recoveries on a monthly basis rather than on a pricing period basis and that the court should not admit such calculations into evidence.[2] On August 7, 1984, the district court granted Murphy's motion, ruling that "deemed recoveries should be measured for each pricing period." On August 9, Kickapoo filed a motion and supporting brief urging the court to reconsider its August 7 ruling with respect to pricing periods. Kickapoo complained that it would be "impossible" for it to proceed to trial on its overcharge claim if the ruling stood. After additional briefs and oral argument, on September 24 the district court affirmed its August 7 ruling. In the meantime, Kickapoo had moved to reopen discovery. The district court denied this motion on October 1, 1984. Kickapoo did not appeal this ruling. Unable to offer evidence of alleged overcharges by calculating deemed cost recoveries on a pricing period basis, Kickapoo did not pursue this claim at trial. Accordingly, the district court dismissed the claim in an amended final judgment. Kickapoo appeals, arguing that the district court erred in ruling that the EA/DRR required Murphy's deemed cost recoveries to be calculated on a pricing period basis.

## II. STANDARD OF REVIEW

We recognize that district courts enjoy wide discretion in admitting or excluding evidence, and a court of appeals will only reverse where there has been clear abuse of that discretion. *See McNeese v. Reading and Bates Drilling Co.*, 749 F.2d 270, 274 (5th Cir.1985); *Ward v. Westland Plastics, Inc.*, 651 F.2d 1266, 1270 (9th Cir.1980); *see also* 11 C. Wright & A. Miller, Federal Practice & Procedure § 2885 (1973). But where the district court's ruling is dependent upon or integrally related to its interpretation of a regulation or statute, review by the court of appeals is plenary. *See Hibernia National Bank v. United States*, 740 F.2d 382, 387 (5th Cir.1984); *Federal Trade Commission v. Texaco*, 555 F.2d 862, 876 n. 29 (D.C.Cir.) (en banc), *cert. denied*, 431 U.S. 974, 97 S.Ct. 2939, 2940, 53 L.Ed.2d 1072 (1977) ("Here the determinations of the trial court were dependent on, and integrally related to, a *legal* premise. In such a case, the appellate court has the authority—and the duty—to determine the proper legal premise and to correct the legal error of the trial judge, without limitation by the doctrines of 'clearly erroneous' and 'abuse of discretion' that are applicable to review of factual determinations.") (emphasis in original); *see also* 11 C. Wright & A. Miller, Federal Practice & Procedure § 2962, at 636–37 (1973). Here, the district court's order granting Murphy's motion in limine turned upon its interpretation of the EA/DRR. Consequently, our review of that order is plenary.

## III. DISCUSSION

Kickapoo argues that (1) the plain language of the price regulations required a wide deemed recoveries of increased costs as though Murphy had charged this amount in all gasoline sales for the month.

---

**2.** Kickapoo retained Mr. Sigmund L. Sklar to calculate the amount of alleged overcharges due Kickapoo. Mr. Sklar's analysis is described in the parties' Joint Stipulation of Uncontested Material Facts:

In his equal application/deemed recovery rule analyses, Mr. Sklar identifies for each calendar month the highest weighted average increment of increased costs for any gasoline class of purchaser in all sales during that month.... Neither Mr. Sklar nor Kickapoo examined individual sales transaction records, such as invoices, periodic commission and consigned dealer station reports, or bulk plant daily reports. After identifying for each calendar month the highest weighted average cost increment from the Murphy workpapers, Mr. Sklar then computed firm-

It is interesting to note that Mr. Sklar took a different position in an affidavit given in *Eastern Air Lines, Inc. v. Atlantic Richfield Company*, 4 Energy Mgmt. (CCH) ¶ 26,327 (S.D.Fla. 1982), *affirmed*, 712 F.2d 1402 (Temp.Emer.Ct. App.), *cert. denied*, 464 U.S. 915, 104 S.Ct. 278, 78 L.Ed.2d 258 (1983). In suggesting that Eastern's methodology should have recognized pricing periods other than calendar months, Mr. Sklar stated, "The obvious impact of using an average monthly price increase to compute alleged overcharges to Eastern is to understate such price increases and overstate the damage claim."

refiner's deemed cost recoveries to be calculated on a monthly basis; (2) DOE has interpreted the EA/DRR to require deemed cost recoveries to be calculated on a monthly basis; and (3) permitting refiners to calculate deemed recoveries on a pricing period basis would undermine the EA/DRR.[3]

## A. Plain Language of the EA/DRR and the Regulatory Scheme

■ The EA/DRR states:

(h) *Equal application among classes of purchase—(1) General rule.* Except as provided in paragraphs (h)(2) and (3) of this section, when a firm calculates the amount of increased costs not recouped that may be added to May 15, 1973 selling prices to compute maximum allowable prices in a subsequent month, it shall calculate its revenues as though the greatest amount of increased costs actually added to any May 15, 1973 selling price of the product concerned and included in the price charged to any class of purchaser, had been added, in the same amount, to the May 15, 1973 selling prices of that product and included in the price charged to each class of purchaser.

10 C.F.R. § 212.83(h)(1) (1981).[4] Kickapoo first argues that the plain language of the rule requires deemed cost recoveries to be calculated on a monthly basis because the term "month" "is explicitly used." We flatly reject this argument; "month" as here used refers to the computation of maximum allowable prices, not deemed cost recoveries.

Other than the EA/DRR, the most pertinent provision of the refiner price rule for our inquiry is the banking provision because it indicates how increased costs are to be calculated. Kickapoo argues that deeming cost recoveries on a monthly basis is implicit in the refiner's price rule because its "banking" provision requires "[b]eginning with February 29, 1976 ... and at the end of each month thereafter, each refiner shall calculate the total amount of unrecouped increased costs" of crude oil and unrecouped increased non-product costs "incurred in January 1976 or any month thereafter ... that may be carried forward and added to May 15, 1973 selling prices...." 10 C.F.R. § 212.83(e)(2), (4) (1981). We believe the "banking" provision of the refiner price rule cuts against Kickapoo's argument that the EA/DRR requires deemed increased cost recoveries to be cal-

**3.** In its reply brief and during oral argument, Kickapoo advanced a fourth argument—that Murphy calculated deemed cost recoveries on a monthly basis using weighted average increments. But Edward B. Berry, Murphy's Supervisor of Regulatory Reporting and Compliance, indicated in his deposition that Murphy used the pricing period methodology:

Q: In complying with the Equal Application Rule, did Murphy apply the equal application of increased costs on a pricing period basis or on a monthly basis?

A: That would be on a pricing period basis. Moreover, it is clear from the record that Kickapoo recognized early in the litigation that Murphy used pricing period methodology. In its interrogatories, Kickapoo asked Murphy to identify the "date range for each pricing period or portion of pricing period which falls within a month" and the "greatest amount of increased costs (in cents per gallon) added to the May 15, 1973 weighted average selling price of gasoline in said pricing period or portion of pricing period." Murphy provided Kickapoo with schedules of this requested information.

Finally, it is interesting to note that in other litigation, Kickapoo's counsel acknowledged

that Murphy used the pricing period methodology:

TECA has before it the issue whether the Price Regulations required that recoveries be calculated on a monthly basis. Kickapoo Oil Company, Inc. v. Murphy Oil Corporation, TECA No. 7–14. In that case, during the period of price controls, the refiner-defendant had computed its cost recoveries on the basis of periods with a duration less than a month.... Specifically, the refiner multiplied the applicable increment of increased costs times the volume of product sold during a 'pricing period.' The total monthly recoveries reflected the sum of the recoveries for each period between price changes.

Memorandum in Support of Plaintiff's Motion in Limine to Establish Methodology for Calculating Overcharges, Martin Oil Service, Inc. v. Koch Refining Co., Civil Action No. 81–C–1844 (N.D.Ill.) (dated August 22, 1985).

**4.** For an excellent explanation of the rule and its history, see *Eastern Air Lines, Inc. v. Mobil Oil Corporation,* 564 F.Supp. 1131, 1139–42 & n. 11 (S.D.Fla.1983), *affirmed,* 735 F.2d 1379 (Temp.Emer.Ct.App.1984).

culated on a monthly basis. The fact that "the *total amount* of increased *costs*" were to be calculated at the end of each month implicitly recognizes that refiners computed their increased costs at various times during a month, but reported an aggregate sum at the end of the month.

Murphy, on the other hand, argues that deeming cost recoveries on a pricing period basis is implicit in a regulatory scheme that allows mid-month price changes. On January 7, 1976, DOE amended the regulations to delete the "once-a-month" pricing rule and to allow refiners to change their prices during a month (as long as they remained below the refiner's maximum allowable price). 41 Fed.Reg. 1267 (Jan. 7, 1976); 10 C.F.R. § 212.83(c)(1)(i)(A) (1981). In rescinding the once-a-month rule, the Federal Energy Administration (hereafter FEA) stated:

> Although independent marketers may 'bank' unrecouped product cost increases for later recoupment under § 212.93(e), competition is such under current conditions of ample supply that such cost increases often remain unrecouped. Independent marketers believe that elimination of the rule will improve their opportunities for recouping these product cost increases and, perhaps more importantly, will generally enhance the ability of independent marketers to react more quickly to competition [sic].

41 Fed.Reg. 1267, 1267 (Jan. 7, 1976). FEA eliminated the once-a-month rule to increase a refiner's pricing flexibility and in spite of the more complicated audit procedures that would result. We agree with the district court that "[i]t would be illogical to provide for [mid-month price] changes and then penalize refiners for making such changes by holding them to a monthly weighted average calculation for the purpose of computing their deemed recoveries."

## B. DOE's Construction of the EA/DRR

The text of the EA/DRR does not provide clear guidance as to the proper methodology to be utilized to compute a refiner's deemed cost recoveries. As this Court stated in *Standard Oil Co. v. Department of Energy*, 596 F.2d 1029, 1055 (Temp.Emer.Ct.App.1978), "It is well established that where administrative regulations are ambiguous on their face, the court should look to the construction which the responsible agency has given them." (citing *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)). The primary rationale behind the doctrine of deference, we noted, "is recognition of administrative expertise developed through implementation and enforcement of statutes and regulations." 596 F.2d at 1055. As a result, "an agency's interpretation is normally deemed controlling unless it is plainly erroneous or inconsistent with the regulations." *Id.* (citing *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)).

### 1. Enforcement Manual

Kickapoo points out that the Economic Regulatory Administration Enforcement Manual directed DOE's audit personnel to make calculations required by the EA/DRR using a calendar month period. Enforcement Manual § 4.206.05, CCH ed. ¶ 53,206, at 53,064–65. While the Enforcement Manual does state that recoveries are to be computed only once each month, it is not authoritative. The preface to the Manual states:

> These materials *do not constitute formal legal interpretations of the Mandatory Petroleum Allocation and Price Regulations.*... In the event information in this Manual is inconsistent with regulations or other official agency pronouncement, the regulations take precedent. Moreover, these materials are not to be construed as binding upon the agency and instead are only to be used as guidelines that may be revised at any time. (emphasis added).

*Id.* at 50,001. By the Manual's explicit language, it contains no interpretation by DOE of the EA/DRR. Moreover, as will be noted later, DOE has used the pricing period methodology in its audits to deter-

mine refiner's compliance with the regulations.

### 2. View of Former DOE Official

Kickapoo's next argument that DOE has interpreted the EA/DRR to require a refiner to deem cost recoveries on a monthly basis is based on an affidavit by Melvin Goldstein, former director of DOE Office of Hearings and Appeals. In his affidavit, Mr. Goldstein stated that it was his opinion that "the price regulations required that a refiner comply with the equal application/deemed recovery rule on a uniform calendar month basis, regardless of the refiner's own particular pricing periods." Mr. Goldstein's view, however, does not constitute an agency's interpretation of its regulation. This Court has stated that for a variety of reasons the views of a former DOE official "can be accorded little if any weight in appraising the product of countless participants." *Pennzoil Co. v. Department of Energy,* 680 F.2d 156, 161–62 (Temp.Emer.Ct.App.1982), *cert. dismissed,* 459 U.S. 1190, 103 S.Ct. 841, 74 L.Ed.2d 1032 (1983); *see also Securities & Exchange Commission v. National Student Marketing,* 538 F.2d 404, 406–07 (D.C.Cir. 1976), *cert. denied,* 429 U.S. 1073, 97 S.Ct. 809, 50 L.Ed.2d 790 (1977) ("internal documents authored by agency staff or individual commissioners 'cannot be considered as an official agency expression of the will and intent of the Commission' "). Accordingly, we do not consider Mr. Goldstein's view an interpretation by DOE of its regulations.

### 3. Notices of Probable Violation and Proposed Remedial Orders

Murphy cites to this Court four instances in which DOE has used the pricing period methodology to deem a refiner's cost recoveries. In two Notices of Probable Violation (NOPV), DOE has utilized the pricing period methodology in its audits for the purpose of deeming recoveries under the EA/DRR. *See* NOPV, Amerada Hess Corp., Case No. RHSM01901 (Oct. 23, 1981); NOPV, Clark Refining Co., Case No. RCKB000101 (Jan. 6, 1981). Similarly,

DOE has computed a refiner's deemed cost recoveries on a pricing period basis in two Proposed Remedial Orders (PROs). PRO, Crown Central Petroleum Corp., Case No. RCWB00000 (May 26, 1982); PRO, Marathon Oil Co., Case No. RMNM00101 (Oct. 27, 1981). In the *Marathon* PRO, DOE's Office of Hearings and Appeals strongly indicated that deemed cost recoveries should be calculated on a pricing period, not a monthly, basis:

> In its Response to OSC's [Office of Special Counsel's] Benzene-Toluene NOPV, Marathon also argued that OSC should have applied the equal application rule on a pricing period rather than a monthly basis in computing Marathon's unreported cost recoveries. OSC agrees with this assertion and has altered the violation amount alleged in this Proposed Remedial Order accordingly.

*Id.* at 29 n. 32.

Kickapoo cites *National Distillers and Chemical Corporation v. Department of Energy,* 662 F.2d 754, 757 (Temp.Emer.Ct. App.1981) for the proposition that NOPVs and PROs represent "only a preliminary agency assessment, not a final determination concerning a violation." *Id.* at 757. The issue in *National Distillers,* however, was whether a NOPV was final agency action for the purposes of judicial review. It does not follow that DOE's interpretation of the methodology required for deeming cost recoveries under the EA/DRR is not an agency's interpretation of its regulations. We believe that DOE's use of the pricing period methodology in its audits constitutes an interpretation by DOE that its regulations permit a refiner's deemed cost recoveries to be calculated using the pricing period methodology.

### 4. DOE's *Amicus Curiae* Brief

In its *amicus curiae* brief, DOE urges this Court to affirm the district court's holding that EA/DRR required Murphy's deemed cost recoveries to be calculated on a pricing period basis. DOE points out that it "has long applied the refiner price rules in this very manner" and "repeatedly

has accepted pricing periods other than calendar months in its audits." DOE also states that it has used the pricing period methodology "without encountering the 'enormous audit burden' Kickapoo imagines, since refiners typically utilize no more than two or three pricing periods in any particular month."

We recognize that "[i]n construing administrative regulations, 'the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation,'" *United States v. Larionoff,* 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977) (quoting *Bowles v. Seminole Rock Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)). We are also aware that "where an agency files an *amicus curiae* brief setting forth its opinion as to the proper reading of one of its regulations, such an expression of opinion is not an 'interpretation' within the meaning of the above-cited rule[ ]." *Morabito v. Blum,* 528 F.Supp. 252, 269–70 n. 17 (S.D.N.Y.1981); *see also Alaniz v. Office of Personnel Management,* 728 F.2d 1460, 1465 (Fed.Cir.1984) ("no deference is due an agency 'interpretation' fashioned for the purposes of litigation"); *Ames v. Merrill Lynch, Pierce, Fenner & Smith,* 567 F.2d 1174, 1177 n. 3 (2d Cir.1977) ("We cannot accept the Commission's current litigating position as an 'interpretation' by the Commission"); *Ram v. Blum,* 533 F.Supp. 933, 943 (S.D.N.Y.1982). *But see Ames,* 567 F.2d 1174, 1182 n. 2 (Meskill, J., dissenting) ("I can perceive no reason why the views of an administrative agency should be given either more or less deference depending on where they are expressed. An *amicus* brief is as good a place as any."). DOE's *amicus* brief, therefore, carries weight only to the extent it is persuasive in its own right. *See Ram,* 533 F.Supp. at 943; *Morabito,* 528 F.Supp. at 269–70 n. 3. The Supreme Court has outlined useful factors a court should consider: "The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade, if lacking the power to control." *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).

We find DOE's construction advanced in its *amicus* brief persuasive. It is derived from years of experience with the price regulations. It is consistent with the interpretation DOE has used in its audits. It has logical force in its intimation that requiring deemed recoveries to be calculated on a monthly basis is inconsistent with a regulatory scheme that permits mid-month price changes. Finally, the fact that DOE has used the pricing period methodology consistently and without the enormous audit burden imagined by Kickapoo cuts against Kickapoo's argument that the rule would be impossible to enforce on a pricing period basis.

5. Conclusion

In its NOPVs and PROs, DOE has adopted the pricing period methodology to calculate a refiner's deemed cost recoveries. Further, DOE's amicus brief, though not an agency "interpretation," carries weight for the reasons stated above. Under *Standard Oil,* we must give controlling weight to DOE's interpretation unless plainly erroneous or inconsistent with the regulations. Because we find DOE's interpretations fully consistent with a regulatory scheme that permits mid-month price changes, we give it controlling weight. Consequently, the district court did not err in requiring Murphy's deemed cost recoveries to be calculated on a pricing period basis.

C. The Pricing Period Methodology Will Not Undermine the Rule

Kickapoo also argues that deeming cost recoveries on a pricing period basis would undermine the purpose behind the EA/DRR—to encourage refiners to pass increased costs equally to all classes of purchaser. Kickapoo suggests that a refiner could change its prices each time it

makes a sale to a different customer, resulting in hundreds of pricing periods during a month. The issue of such abuse of the pricing period methodology is not before us because Murphy typically had only two or three pricing periods during a month. We leave for another day the determination of a precise definition of the "pricing period" but we note our disagreement with the dictum in the district court's order that a new pricing period begins each time a refiner changes its prices. Rather, we believe other factors—such as whether the refiner's method for implementing price changes was historically and consistently utilized and whether a price change was made available to all customers for a reasonable period of time for them to take advantage of it—should be taken into account to determine whether a new pricing period has begun. An isolated price change available to one or a few customers but not to many others would unlikely commence a new pricing period.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.