MARTIN OIL SERVICE,
INC., Plaintiff,

v.

KOCH REFINING CO., and Koch
Industries, Inc., Defendants.

No. 81 C 1844.

United States District Court,
N.D. Illinois, E.D.

May 15, 1986.

―――――――

William H. Bode, Donald W. Fowler, Thomas M. Parry, Spriggs, Bode & Hollingsworth, Washington, D.C., Peter B. Freeman, Karen P. Flynn, Hopkins & Sutter, Chicago, Ill., for plaintiff.

Wayne E. Babler, Jr. and William E. Kelly, Quarles & Brady, Milwaukee, Wis., and Pope, Ballard, Shepard & Fowle, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

This is an action for overcharges under Section 210(b) of the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 Note, as incorporated in the Emergency Petroleum Allocation Act, 15 U.S.C. § 751 *et seq.*[1] Due to various orders entered since this case began in 1981, the case now presents the narrow question of whether and to what extent Martin Oil was damaged by Koch's failure to calculate "deemed recoveries" when computing its maximum lawful selling price for gasoline sold between June 11, 1976 and January 28, 1981. While the question is narrow it is also complex due to the nature of the regulations that govern such sales and the fact that they were constantly changed or amended.

After extensive discovery, the parties are now preparing for to trial. However, before doing so, Martin has filed a motion *in limine* requesting the court to establish a methodology for calculating overcharges it claims resulted from Koch's failure to apply the Deemed Recovery Rule, 10 C.F.R. 212.83(h) (1980). The motion is really in the nature of a motion for summary judgment on the question of methodology and the same general standards applied to the latter will be used here.

## I. Background

The maximum prices refiners could charge in the sale of gasoline during the period here in dispute were governed by the regulations promulgated under the Emergency Petroleum Allocation Act. The regulations were first published at 6 C.F.R. § 150, Subpart L, 38 Fed.Reg. 22536 (August 22, 1973), but were subsequently republished in full at 10 C.F.R. § 212 *et seq.*, 39 Fed.Reg. 1924 (January 15, 1974).

> It is difficult, even for experts, to understand these complex regulations, as is evidenced by the frequent correction, modification, change, and clarifying rulings and by the fact that cross examination of plaintiff's own CPA witness drew admissions that he had twice made substantial errors in calculating the overcharges claimed.

*Longview Refining Co. v. Shore,* 554 F.2d 1006 (Temp.Emer.Ct.App.), *cert. denied* 434 U.S. 836, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977). In broad terms, the regulation set up the following pricing framework:

> A refiner could not charge in excess of a "maximum allowable price", which was defined ... as the 1973 base price plus any increased costs of the refiner. These rules did not require refiners to pass increased costs onto the purchasers; they merely allowed them to do so .... When a refiner elected not to pass costs onto purchasers, it could "bank" these unrecouped costs for later passthrough. Any time a company added previously unrecouped costs to its current price, it, of course, had to reduce its "bank" of these costs.

*McWhirter Distributing Co., Inc., v. Texaco, Inc.,* 668 F.2d 511 (Temp.Emer.Ct.App. 1981). *See also Martin Oil Service, Inc. v. Koch Refining Co.,* 582 F.Supp. 1061 (N.D. Ill.1984). The amount in the "bank" signified the refiner's under-or over-recovery, *i.e.,* the amount of revenue the refiner received from gasoline sales under or over

---

1. Plaintiff does not cite the exact section of the Economic Stabilization Act upon which it relies, but given the opening statement in its amended complaint that "this is an action for price overcharges" and its fourth cause of action, we feel the case is properly characterized as an overcharge case, rather than a price discrimination case.

the maximum amount permitted by the regulations. The plaintiffs' claim, basically, is that by not calculating "deemed recovery" pursuant to 10 C.F.R. § 212.83(h), Koch understated its over-recovery or overstated its under-recovery, ultimately leading to overcharges.

■ The Deemed Recovery Rule was first issued in September 1974 as 10 C.F.R. § 212.83(e)(1) and provided:

> ... with respect to [gasoline] ... when a firm calculates the amount of increased product costs not recouped which may be added to the May 15, 1973 selling price to compute [maximum selling price for gasoline] in a subsequent month, it shall calculate its revenues so the greatest amount of increased product costs actually added to any May 15, 1973 selling price of [gasoline] and included in the price charged to any class of purchaser, had been added, in the same amount, to the May 15, 1973 selling price of [gasoline] and included in the price charged to each class of purchaser ....

10 C.F.R. § 212.83(e)(1) (1975); *recodified* as 10 C.F.R. § 212.83(e)(3) (1976). In 1976 the section was amended to include product as well as non-product costs in the amount of increased costs calculated. The amendment went into effect February 1, 1976. 41 Fed.Reg. 1532–33 (April 12, 1976). *See* 10 C.F.R. § 212.83(h) (1977). Besides this

change, the provision remained the same until gas prices were deregulated, effective January 28, 1981.[2] Given that the parties have stipulated the relevant time period in this case to be June 11, 1976 to January 28, 1981, we hold the Deemed Recovery Rule as it appeared in 10 C.F.R. § 212.83(h) (1980) applies in this case.[3]

■ The Deemed Recovery Rule operates to reduce the underrecovery or increase the over-recovery available in a subsequent month by the sum of the differences between the highest cost increment paid by any class of purchaser and the cost increment paid by each class of purchaser in the month of measurement. In other words, the refiner is deemed to have recovered the highest cost increment between pricing periods from all its purchasers, and this deemed recovery acts as a penalty by reducing the refiner's under-recovery or increasing its over-recovery. *See Eastern Air Lines, Inc. v. Mobil Oil Corp.*, 564 F.Supp. 1131, 1139 (S.D.Fla.1983), *aff'd* 735 F.2d 1379 (Temp.Emer.Ct.App.1984); *see also McWhirter*, 668 F.2d at 517.

## II.

In its motion *in limine* plaintiff raises several issues regarding the calculation of deemed recoveries in this case. However,

2. On May 5, 1977, 10 C.F.R. § 212.83(h) was amended to include the "3-cent rule," which "allowed refiners to pass through an additional three cents per gallon of increased product costs in sales of motor gasoline at refiner-operated stations." *Mobil Oil Corp. v. Dept. of Energy*, 728 F.2d 1477, 1482 (Temp.Emer.Ct.App.1983), *cert. denied* 467 U.S. 1255, 104 S.Ct. 3545, 82 L.Ed.2d 849 (1984). While the 3-cent rule allowed retail classes of purchasers of motor gasoline to be treated differently from other classes of purchasers, it did not allow for "price variations between individual refiner-owned stations without penalty." *Id.* at 1484. The parties do not raise as an issue whether the 3-cent rule should have been calculated in this case and the court makes no decision here regarding its applicability, as we cannot tell if Koch sold gasoline to any of its own stations during a relevant time period.

*See Naph-Sol Refining Co. v. Murphy Oil Co.*, 550 F.Supp. 297, 320–21 (W.D.Mich.1982), *aff'd in part and rev'd in part sub nom. Mobil Oil*

*Corp. v. Dept. of Energy*, 728 F.2d 1477 (Temp. Emer.Ct.App.1983), *cert. denied* 467 U.S. 1255, 104 S.Ct. 3545, 82 L.Ed.2d 849 (1984), for details of the rule's history.

3. The regulation states in relevant part:

> (1) **General rule.** Except as provided in paragraphs (h)(2) and (3) of this section, when a firm calculates the amount of increased costs not recouped that may be added to May 15, 1973, selling prices to compute maximum allowable prices in a subsequent month, it shall calculate its revenues as though the greatest amount of increased costs actually added to any May 15, 1973, selling price of the product concerned and included in the price charged to any class of purchaser, had been added, in the same amount, to the May 15, 1973, selling prices of that product and included in the price charged to each class of purchaser.

10 C.F.R. § 212.83(h) (1980).

**1190**

before addressing these issues we address defendant's standing argument.

■ Defendant claims that because plaintiff did not pay the highest cost increment charged to Koch's customers, it does not have a claim under the Deemed Recovery Rule. This argument belies the plain language of the rule, which states that the highest cost increment charged any class of purchaser will be deemed to have been charged each class. There is no indication in the rule that the injury accrues only to the purchaser(s) charged the highest cost increment; rather, the rule affects the amount of over- or under-recovery carried forward, which in turn affects the maximum lawful selling price (MLSP) chargeable to any customer. *See Kickapoo Oil Co. v. Murphy Oil Co.*, No. 78–C–478–C, slip op. at 9 (W.D.Wis. August 7, 1984), *aff'd on other grounds* 779 F.2d 61 (Temp. Emer.Ct.App.1985). Defendants submit that they never performed the deemed recovery calculation. That calculation may show that Martin was being charged more than the MLSP during certain periods. Plaintiff here has satisfied the standard requirement of alleging an injury in fact on which it has a right to recover. *Cf. Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). It seeks redress for its own injury, not the injury to another. If it fails to prove that it was, after recalculations based on the Deemed Recovery Rule, charged more than the MLSP then it will not recover because it failed to prove injury, not because it lacked standing to make the claim.

■ The defendant cites *Eastern Air Lines, Inc. v. Atlantic Richfield Co.*, 712 F.2d 1402 (Temp.Emer.Ct.App.), *cert. denied* 464 U.S. 915, 104 S.Ct. 278, 78 L.Ed.2d 258 (1983), as support for its standing argument, but the case in fact supports the plaintiff's position. In that case ARCO proved that Eastern had been charged a smaller share of increased costs available for recovery by ARCO than ARCO's other non-contract jet fuel customers. Thus, the court upheld the district court's finding that the "equal application" rule was not

violated. *Id.* at 1410. However, the court also found, as a separate issue, that ARCO had improperly calculated banked costs and that Eastern was entitled to its share of the over-recovery to ARCO that resulted. *Id.* at 1409. This case makes clear that the issue of whether or not the refiner engaged in price discrimination is separate from when the refiner overcharged its customers by performing its recovery calculation incorrectly.

In its motion *in limine* Martin addressed several parameters involved in determining the MSLP. The first issue has to do with applying the statute of limitations to the calculations. Martin argued in its initial brief that although it was barred from recovering overcharges made before June 11, 1976, it should be allowed to calculate the amount of over-recovery existing on that date by going back to September 1974 when the Deemed Recovery Rule went into effect. Martin based its argument on the fact that the over-recovery figure in any one month depends on the previous month's figures. Koch objected. In .its reply brief Martin agreed to begin calculating overcharges as of June 1976, using the figures Koch had submitted for that date. Koch again objects, on the ground that the statute of limitations is a total bar to Martin's claim of overcharges because the cause of action accrued when the first overcharge occurred, allegedly in January 1976.

The plaintiff filed on June 11, 1981 for violations which it claims continued from the day the Deemed Recovery Rule went into effect until gasoline sales were deregulated on January 28, 1981. The statute of limitations in this action is five years. Applying the continuing violation method of analysis, the plaintiff can recover for violations of the Deemed Recovery Rule which occurred after June 11, 1976.

Defendants' cases are not to the contrary. The court in *Western Mountain Oil, Inc. v. Gulf Oil Corp.*, 726 F.2d 765 (Temp.Emer.Ct.App.1983), held only that an overcharge claim, based on placement in an improper class of purchaser, accrued at the time overcharging which resulted from

the improper placement began. The court in that case noted that "if the case before us was, as was *Johnson [Oil Co., Inc. v. U.S. Department of Energy*, 690 F.2d 191 (Temp.Emer.Ct.App.1982)], a 'plain overcharge case,' a continuing violation theory would be appropriate." *Western Mountain*, 726 F.2d at 768. *See also Johnson Oil Co., Inc. v. U.S. Dept. of Energy*, 690 F.2d 191, 196 (Temp.Emer.Ct.App.1982). Defendant also cites two cases in this district, *Refiners Distributing Corp., et al. v. Atlantic Richfield Co.*, 4 Energy Mgmt., (CCH) ¶ 25,506 (N.D.Ill.1984) [Available on WESTLAW, DCTU database], and *Powerama Distributing v. Atlantic Richfield Co.*, 4 Energy Mgmt., (CCH) ¶ 26,507 (N.D.Ill. 1984), for two propositions: (1) that a cause of action on overcharges accrues at the time the plaintiff is first overcharged as a result of the alleged improper method of passing on the increased costs and (2) that this cause of action does not come within the continuing violation theory. Defendants are correct in citing these cases for the first proposition; however, they say nothing about the second proposition. We hold that here, where plaintiff has shown that the Deemed Recovery Rule was never applied and therefore calculations were never correct under 10 C.F.R. § 212.83(h), the violation continues until January 28, 1981, when the pricing of gasoline was deregulated. Thus, the statute of limitations does not act as a total bar to plaintiff's claim. Because Martin has agreed to use Koch's figures as they existed on June 11, 1976, there is nothing here for the court to decide.

Martin also raised the issue of whether the calculations to arrive at the alleged over-recovery figure should be made on a monthly or pricing period basis. Martin acknowledges that although the regulations speak in terms of months, a refiner can calculate costs and recoveries on a "pricing period" basis, defined as company-wide pricing changes of reasonable duration. *Kickapoo Oil Co., Inc. v. Murphy Oil Corp.*, 779 F.2d 61 (Temp.Emer.Ct.App. 1985). In that case the court noted that it was "clear from the record that Kickapoo

recognized early in the litigation that Murphy used pricing period methodology." *Id.* at 64 n. 3. Martin argues, however, that pricing period calculations are impossible in this case because Koch did not maintain cost recovery records on a pricing period basis. Koch denies this, claiming that plaintiff has all the information necessary to make recovery calculations based on pricing periods. Specifically, Koch claims it produced sales information on a pricing period basis during discovery, which Martin used to generate its over-recovery figures. The sales data submitted as examples by Koch, in defense of this issue, show that prices changed on a basis more frequently than monthly. Martin claims that it based its calculations not on Koch's sales information but on its cost recovery records, which were kept on a monthly basis.

The objective is to use the most accurate measurement of overcharges which is reasonably attainable. Martin insists that Koch's records are such that the most reasonable deeming period to use is monthly. Koch contends that its records reflect pricing periods (although what those might be is not explained), and that those pricing periods should be the basis of calculations. That is a factual dispute which cannot be determined through the present motion. Martin is certainly free to act on its belief that a monthly measurement is appropriate and seek recovery on that basis. Since Koch disagrees with that position it is capable of generating its own data based on the pricing periods it considers appropriate. In either event, the parties should have ample opportunity to analyze and develop a response to the other's opposing methodology before the matter is determined. That leaves, then, to a trier of fact the determination of which methodology in the circumstances of this case most accurately measures overcharges.

In their motion *in limine* plaintiff also raises a more comprehensive methodology question. In calculating the total over-recovery, Martin originally summed up each over-recovery in each month of

measurement, rather than their differential. This resulted in double-counting of over-recovery: once when added to cost incurred to arrive at the cost available for passthrough in a subsequent month, and once when added to the subsequent month's over-recovery. As defendant correctly points out, and plaintiff actually admits in its response brief, such double-counting is not allowed by the regulations. *See Eastern Air Lines, Inc. v. Atlantic Richfield Co.*, 712 F.2d at 1409.[4]

Martin acknowledged the double-counting problem by submitting an alternative calculation method. This method (which it calls the "stipulated methodology") appears to address adequately most of the proper concerns of the defendant. This court uses the word "appears" advisedly because it does not feel entirely comfortable with either its grasp of a complicated subject area or its awareness of all the ramifications of reliance upon a theoretical model. Defendant's response is rather similar although its level of discomfort is expressed more stridently. That model does, however, seem to provide an acceptable starting point. It appears to eliminate the double-counting problem.

It also focuses on the injury to Martin and not another. Koch seems to urge that a sale above MLSP is somehow an overcharge necessarily unrelated to the Deemed Recovery Rule. But what Martin is complaining of is sales to plaintiff at prices above the MLSP when the MLSP has been recalculated pursuant to the Deemed Recovery Rule. If Koch used up banked costs more rapidly than it believed it had because of a failure to "deem" cost recoveries as required and, subsequently, used no longer available costs to calculate its MLSP, then the price it believed to be its MLSP would exceed its actual MLSP. If the prices charged Martin then exceeded

the proper MLSP Martin is entitled to recover for that overcharge to it. It may well be that another was charged a higher price and thus suffered a greater injury. It may be that Koch charged Martin less than it believed to be the MLSP and that the price charged was no more than the proper MLSP and that, accordingly, Martin had no injury. The "stipulated methodology" appears to follow that concept.

▪ Lastly, Koch contends that in no case can negative costs be carried forward in subsequent months. Koch relies on 10 C.F.R. § 212.83(g) for this proposition. However, it is our understanding that this subsection stands only for the proposition that over-recoveries from a particular product are to be credited against that product's cost increases and cannot be transferred to other product categories. *See Tenneco Oil Co.*, 1 DOE, ¶ 82,512 at 85,041 (November 15, 1977) (interpreting a precursor of subsection (g)). Indeed, since the Deemed Recovery Rule is a vehicle for penalizing unequal cost pass-throughs by an adverse impact upon MLSP, the methodology for calculating MLSP in the event of unequal increases should not be substantively affected because there were, in fact, no costs available for a pass-through to anyone. If the price previously charged was the MLSP, any increase to any class of purchasers would be, by definition, an overcharge, and the application of the Deemed Recovery Rule would increase that overcharge.

▪ The court notes at this time that the parties have not identified the cost recovery numbers to be used in calculating overcharges. Arriving at the correct numbers involves complicated computations not at issue here. Costs calculated for each month during the relevant time period are governed by the regulations in effect at

---

**4.** The court in *Eastern Air Lines, supra,* used the following illustration to convey the results of this double-counting:

> Suppose I loan you a dollar a day for five consecutive days; a dollar on Monday, a dollar on Tuesday, a dollar on Wednesday, a dollar on Thursday and a dollar on Friday.

> ... using Eastern's [double-counting] methodology, you would owe me $1 for Monday, $2 for Tuesday, $3 for Wednesday, $4 for Thursday, and $5 for Friday; a total of $15.

that time. *Cf. Longview Refining Co.*, 554 F.2d at 1022. Not only are the formulae in the regulations complex, but the regulations changed several times during the relevant time period. The nature of the task therefore may call for a special master, someone with a working knowledge of the regulations and the industry who can supervise how the numbers are generated and whether they are applied correctly. Obviously, that supervision will require resolution of subordinate factual disputes, *e.g.*, the higher cost increment in any given period which is to be used in calculating deemed recovery. The court directs the parties to comment within 21 days on the merits of appointing a special master and to recommend who such a special master might be.

### III.

■ There remains several discovery disputes which the court now resolves. First, plaintiff wants to depose a few Koch employees regarding exchange transactions because they suspect that some of these mask sales transactions which should be included in the deemed recovery calculations. If indeed sales occurred, they would impact the numbers Martin uses to calculate over- or under-recovery. Martin has already deposed some of these employees. On the other hand, it did not discover the exchange transactions until the end of 1984 and the beginning of 1985. We find the subject of exchange transactions within the scope of relevant information and grant Martin's request, but limit it to the relevant period of June 11, 1976 to January 28, 1981.

■ Second, Martin has served Koch with requests for admissions, to which Koch objects. The request basically asks Koch to admit or deny Martin's descriptions of sales transactions which it has identified as relevant for deemed recovery purposes. Koch refuses on the basis that to do so is unduly burdensome. However, Koch will eventually have to go through Martin's calculations to determine if there is any dispute, and the calculations are based in part on the sales transactions Mar-

tin has described. As Martin points out, it has saved Koch the enormous burden of putting together the information. For these reasons Koch is directed to respond to Martin's request for admissions and related interrogatories. However, Koch can limit its responses to data for the relevant period: June 11, 1976 to January 28, 1981.

### CONCLUSION

Martin's motion *in limine* is denied with respect to the period of measurement issue. The parties are ordered to use the "stipulated" methodology outlined in plaintiff's reply brief as a starting point for calculating overcharges. A special master may be appointed by the court to supervise the calculations.